**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| JACQUES J. POLAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:08-CV-01416 (RMU) |
| | ) | |
| INTERNATIONAL MONETARY FUND, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT INTERNATIONAL MONETARY FUND'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

As set forth in Defendant's opening memorandum, this action must be dismissed because

the International Monetary Fund (the "Fund" or the "IMF") is absolutely immune from suit

based on two separate and independently sufficient grants of immunity.  ***First***, the IMF's Articles

of Agreement grant the Fund immunity from "every form of judicial process except to the extent

that it expressly waives its immunity for the purpose of any proceedings or by the terms of any

contract."  (IMF Mem. at 3.)  The Articles are a binding treaty of the United States and expressly

have been given "full force and effect" under U.S. law by the Bretton Woods Agreements Act.

(*Id.*)  ***Second***, the International Organizations Immunities Act ("IOIA") provides that the IMF

shall "enjoy the same immunity from suit and every form of judicial process as is enjoyed by

foreign governments, except to the extent that such organizations may expressly waive their

immunity for the purpose of any proceedings or by the terms of any contract."  22 U.S.C.

§ 288a(b).  The D.C. Circuit, in its controlling decision in *Atkinson v. Inter-American*

*Development Bank*, 156 F.3d 1335 (D.C. Cir. 1998), held that the immunities under the IOIA are

"absolute." *Id.* at 1341.

Plaintiff Jacques J. Polak's opposition completely fails to recognize, much less refute, the

IMF's twin sources of absolute immunity.  Remarkably, his brief devotes only a single, five-

sentence paragraph (Opp'n at 5) to the absolute immunity created by the Articles and given

effect in the Bretton Woods Agreements Act.  And as for the separate establishment of immunity

under the IOIA, Plaintiff invites this Court to flout the D.C. Circuit's binding holding in *Atkinson*

and to create, out of whole cloth, a new "functional necessity" limitation on the IOIA's basic

grant of immunity that would both (1) contravene the statute's plain language, and (2) radically

depart from the pre-existing functional necessity concept that the D.C. Circuit has employed in

construing the waiver of immunity set out in the foundational documents of certain other

international organizations—a task that does not arise here because there is no such waiver in the

IMF's Articles.  Not surprisingly, Plaintiff does not cite a single case that has even discussed,

much less adopted, the "functional necessity" limitation he proposes.[1/]  This Court should not be

---

[1/]     As is apparent from his brief, Plaintiff's "functional necessity doctrine" is based not on
the language of the Articles or the IOIA, or any relevant case law, but on a law review article
published last summer.  (*See* Opp'n at 4, 9, 10, 15 (citing Steven Herz, *International
Organizations in U.S. Courts: Reconsidering the Anachronism of Absolute Immunity*, 31 Suffolk
Transnat'l Law Rev. 471 (Summer 2008)).)  Equally irrelevant, Plaintiff devotes the first few
pages of his argument to establishing the role of U.S. law in defining the relevant immunities.
(*See* Opp'n at 2-4.)  But there is no dispute that U.S. law applies, as the Fund's opening brief
emphasized:  the Articles are a binding treaty of the United States, and both the Bretton Woods
Agreements Act and the IOIA are lawfully enacted statutes of the United States.  (*See* IMF Mem.
at 2-3.)

the first.  Plaintiff's action should be dismissed with prejudice for the reasons set forth herein and in the IMF's opening memorandum.[2]

## I.  THE FUND IS UNCONDITIONALLY IMMUNE FROM SUIT UNDER ITS ARTICLES OF AGREEMENT

Plaintiff's attempt to graft a "functional necessity" limitation onto the absolute immunity conferred under the Fund's Articles of Agreement (Opp'n at 5) is impossible to reconcile with both the text of the Articles and the case law interpreting identical language found in the foundational documents of other international organizations.  The Articles provide: "The Fund … shall enjoy immunity from every form of judicial process…."  Art. IX, § 3.  Of course, Plaintiff does not (and could not) contend that a "functional necessity" limitation can be found in Article IX, Section 3.  Instead, he tries to conjure a functional limitation from Section 1 of Article IX, which provides: "To enable the Fund to fulfill the functions with which it is entrusted, the status, immunities, and privileges set forth in this Article shall be accorded to the Fund in the territories of each member."  Art. IX, § 1.  Plaintiff apparently contends (Opp'n at 5) that this language in Section 1 renders the broad and absolute immunity set forth in Section 3 inoperative whenever it can be said that affording the Fund immunity in a particular situation or for a particular kind of claim is somehow not "necessary" to the Fund's ability "to fulfill" its official functions.

---

[2]     Plaintiff's opposition brief makes various self-serving statements and attacks the Fund for what he describes as its "callous and shameful" refusal to provide him with what he considers to be a reasonable settlement offer.  (Opp'n at 2.)  These statements are well outside of the four corners of the Complaint and are utterly irrelevant to the immunity issue before the Court.  For the record, however, the IMF notes that it completely disagrees with Plaintiff's characterizations of its treatment of him.

The limitation on the absolute immunity provided by Section 3 that Plaintiff would read into Section 1, which would undermine the very protection that immunity is intended to afford, is—not surprisingly—wholly without foundation.  *First*, there is not a hint of limitation in the text of Section 1.  To the contrary, it is a prefatory provision that *presupposes* that "the status, immunities, and privileges" that are set forth in the subsequent sections of Article IX are necessary for the Fund to carry out its chartered functions—and it *obligates* member countries to accord them.

*Second,* when Congress incorporated Article IX into U.S. law through the Bretton Woods Agreements Act—fulfilling its obligation under Article IX, § 10—it incorporated only Sections 2 through 9, leaving Section 1 at the door.  *See* 22 U.S.C. § 286h ("The provisions of article IX, sections 2 to 9, both inclusive . . . of the Articles of Agreement of the Fund . . . shall have full force and effect in the United States…").  This absolutely forecloses Plaintiff's argument that Section 1 operates under U.S. law as a limitation on the sections that follow.

*Third*, even if the prefatory language in Section 1 had been incorporated into statutory federal law along with the rest of Article IX, a bedrock canon of statutory construction would prevent it from having any limiting effect on the unambiguous establishment of absolute immunity in Section 3.  Plaintiff's contrary construction would violate the fundamental tenet that "a prefatory clause does not limit or expand the scope of the operative clause" of a statute. *District of Columbia v. Heller*, 128 S. Ct. 2783, 2789 (2008) (construing the prefatory language of the Second Amendment); *id.* at 2790 & n. 3 ("[I]n America, 'the settled principle of law is that the preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms.'" (quoting J. Sutherland, Statutes and Statutory Construction, 47.04 (N. Singer ed. 5th ed. 1992)); *Association of Am. R.R. v. Costle*, 562 F.2d

1310, 1316 (D.C. Cir. 1977) ("Where the enacting or operative parts of a statute are

unambiguous, the meaning of the statute cannot be controlled by language in the preamble.").

Here, Section 3 could hardly be more clear: absent express waiver, "[t]he Fund . . . shall enjoy

immunity from every form of judicial process." Thus, as a matter of statutory construction,

Section 1 does not (and cannot) limit Section 3 in any way.

Plaintiff also ignores the cases that have interpreted language identical to Article IX, § 3

to provide "absolute" immunity to the defendant organization—and to require dismissal on that

basis. The 1946 Convention on the Privileges and Immunities of the United Nations (the "U.N.

Convention") provides:

> The United Nations, its property and assets wherever located and by whomsoever
> held, shall enjoy immunity from every form of legal process except insofar as in
> any particular case it has expressly waived its immunity. . . .

U.N. Convention, Art. II, § 2, 21 U.S.T. 1418, T.I.A.S. No. 6900 (1970). This language is

identical, in all material respects, to the immunity provision in the Fund's Article IX, § 3:

> The Fund, its property and its assets, wherever located and by whomsoever held,
> shall enjoy immunity from every form of judicial process except to the extent that
> it expressly waives its immunity. . . .

Art. IX, § 3.

Courts have repeatedly held that the U.N. Convention language cloaks the U.N. with

"absolute" immunity, and they have done so without any consideration of the "functional

necessity" limitation that Plaintiff urges on this Court. *See, e.g., Brzak v. United Nations*, 551 F.

Supp. 2d 313, 318 (S.D.N.Y. 2008) (dismissing action against the U.N. for lack of subject matter

jurisdiction and noting that the U.N. is "cloaked with absolute immunity" by virtue of the

Convention); *Boimah v. United Nations General Assembly*, 664 F. Supp. 69, 71 (S.D.N.Y. 1987)

("Under the Convention the United Nations' immunity is absolute, subject only to the

organization's express waiver thereof in particular cases."); *DeLuca v. United Nations Org.*, 841

F. Supp. 531, 533 & n.1 (S.D.N.Y. 1994) (dismissing suit against the U.N. and holding that the

Convention "provides sufficient ground for finding the U.N. immune from plaintiff's suit");

*Bisson v. United Nations*, No. 06 Civ. 6352, 2007 WL 2154181, at \*3-4 (S.D.N.Y. July 27,

2007) (similar) (citing cases).  These courts have so ruled despite a clause in the U.N. General

Convention that (unlike Article IX, § 1 of the IMF's Articles) arguably would limit the

immunities enjoyed by the U.N. to those that are "necessary" to the organization's official

functions, under Plaintiff's erroneous approach to statutory construction.  Specifically, the

preface of the U.N. General Convention incorporates Article 105 of the United Nations Charter,

which provides:  "The Organization shall enjoy in the territory of each of its Members *such*

*privileges and immunities as are necessary for the fulfillment of its purposes*" (emphasis added).

In contrast to Art. IX, § 1 of the IMF's Articles, this language in the U.N. Charter might

conceivably support Plaintiff's notion of functional necessity as applied to the U.N., and yet no

court has so held.  Because this (arguably limiting) language was of no moment in the above

cases, it is all the more clear that the *non-limiting* language in Article IX,

§ 1 of the IMF's Articles, on which Plaintiff relies, cannot support his position.

    In sum, Plaintiff has advanced no meritorious ground for opposing dismissal of his suit

based on the immunity established in the IMF's Articles, as incorporated into U.S. law by both

treaty and express operation of the Bretton Woods Agreements Act.  And it would be perfectly

appropriate for this Court to end its analysis here, without going on to consider whether the IOIA

compels the same result.  That is precisely what this Court (per Judge J.H. Green) did in *Kissi v.*

*de Larosiere*, No. 82-1267 (D.D.C. June 23, 1982).  The Court in *Kissi* began and ended its

analysis with the IMF's Articles and the Bretton Woods Agreements Act and noted that "the law

could not be clearer" with respect to the immunity provided under the Articles; the IOIA never

came into play. *Id.* at 2. As the courts found in *Brzak, Boimah*, and *DeLuca*, and as this Court

found in *Kissi,* the broad and unequivocal language above—"immunity from every form of

judicial process"—stands as an absolute barrier to suit. Accordingly, this action must be

dismissed—and it may be dismissed on the basis of the Articles alone.

## II.     THE FUND IS UNCONDITIONALLY IMMUNE FROM SUIT UNDER THE INTERNATIONAL ORGANIZATIONS IMMUNITIES ACT

If the Court elects to determine whether the IOIA provides a separate basis for dismissal

of Plaintiff's suit, it should easily reach the same result. Plaintiff's argument that the IOIA does

not bar his suit is totally without merit.

As the Fund demonstrated in its opening brief, the D.C. Circuit held in *Atkinson*—the

leading and controlling decision regarding the IOIA—that the immunities accorded international

organizations under the IOIA are "absolute." Moreover, as shown below, *Atkinson* also

expressly rejected the very argument that Plaintiff now posits—namely, his claim (Opp'n at 6-9)

that the immunities conferred by the IOIA are nullified unless the defendant organization

demonstrates a "functional need" for immunity. The Court of Appeals in *Atkinson* adopted

precisely the opposite view: it is only a *waiver* of immunity in an organization's foundational

documents—not the grant of immunity in the first instance—that is to be construed with

reference to considerations of functional necessity. 156 F.3d at 1339. Plaintiff asks this Court to

ignore both parts of *Atkinson* and to replace the D.C. Circuit's framework for applying the IOIA

with a "functional necessity" test that has no support in either the statute or the case law.

### A.     The D.C. Circuit's Controlling Decision in *Atkinson* Disposes of This Case Under the IOIA

As set forth in the Fund's opening brief (see Mem. at 5-6), there can be no serious

question that the D.C. Circuit's decision in *Atkinson* is binding on this Court and requires

dismissal of this litigation under the IOIA. The specific question in *Atkinson* was whether the immunities accorded under the IOIA evolved with subsequent developments in international law in a way that would permit the plaintiff's suit to proceed, or whether they instead remained fixed as of the time of the IOIA's enactment in 1945 so as to require dismissal. 156 F.3d at 1341. The D.C. Circuit adopted the latter view and affirmed the district court's dismissal on the ground that the defendant organization, the Inter-American Development Bank, had immunity under the IOIA. *Id.*

Plaintiff erroneously attempts to dismiss the Court of Appeals' analysis of the IOIA in *Atkinson* as merely "lengthy dicta." (Opp'n at 9.) In fact, the analysis was essential to the Court's holding that the Inter-American Development Bank enjoyed immunity under the IOIA. There were three parts to the *Atkinson* Court's legal analysis (Parts II-IV of the decision). *See* 156 F.3d at 1337-43. First, in Part II, the Court assumed *arguendo* that the Bank was absolutely immune under the IOIA and addressed whether the Bank had waived its immunity. The Court held there was no waiver as to the type of suit at issue (garnishment proceedings). *Id.* at 1337-39. Second, in Part III, the *Atkinson* Court considered whether the immunities accorded under the IOIA were evolving in nature or remained fixed as of the time of enactment. After careful analysis of the statute's text and legislative history, the D.C. Circuit held that "Congress' intent was to adopt that body of law only as it existed in 1945—when immunity of foreign sovereigns was absolute," *id.* at 1341, and that the IOIA therefore did not incorporate subsequent developments in international law. *Id.* at 1341-42. Third, in Part IV, the Court observed that "*[e]ven if* we concluded that the IOIA's reference to the law of immunity of foreign sovereigns was an evolving one," so as to conform to the more limited approach of the subsequently enacted Foreign Sovereign Immunities Act ("FSIA"), the plaintiff's case would not come within the

FSIA's only potentially relevant exception to immunity.  *Id.* at 1342 (emphasis added).

Although Plaintiff's argument is far from clear, he seems to be contending that Parts II and III of

*Atkinson* are dicta because the "even if" clause in Part IV made them unnecessary.  That

contention, however, is simply wrong.  *See Natural Res. Def. Council v. Nuclear Regulatory*

*Comm'n*, 216 F.3d 1180, 1189 (D.C. Cir. 2000) ("[W]here there are two grounds, upon either of

which an appellate court may rest its decision, and it adopts both, the ruling on neither is obiter

dictum, but each is the judgment of the court, and of equal validity with the other.") (internal

quotation marks omitted).

Ultimately, Plaintiff descends to arguing that the D.C. Circuit's holding in *Atkinson* that

the IOIA establishes *absolute* immunity from all lawsuits and claims is "mistaken[]" and

"erroneous[]."  (Opp'n at 13.)  The IMF vigorously disagrees with this argument, but it is

irrelevant in any event.  Whatever Plaintiff's disagreements with the D.C. Circuit's unanimous

reasoning may be, they are not for this Court to resolve.  Indeed, the D.C. Circuit continues to

adhere to the "absolute immunity" formulation in *Atkinson*—most recently in a decision earlier

this year.  *See Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, 264 Fed. App'x 13, 15

(D.C. Cir. 2008) (citing *Atkinson* for the proposition that "the immunity conferred upon

international organizations by the IOIA is absolute," and affirming dismissal based on IOIA

immunity); *see also Dujardin v. International Bank for Reconstr. & Dev.*, 9 Fed. App'x 19, 20

(D.C. Cir. 2001) ("The Court [in *Atkinson*] recently interpreted [the IOIA] to grant international

organizations absolute immunity from all lawsuits and claims;" affirming dismissal based on

IOIA immunity).  This Court is bound to follow *Atkinson* and its progeny, which plainly require

dismissal of Plaintiff's suit.

**B.      Immunity Under the IOIA Is Not Limited By "Functional Necessity"**

Apart from contending that *Atkinson's* central holding may simply be ignored, Plaintiff's

main argument for limiting the scope of the immunity granted to the Fund under the IOIA is, like

his argument about the Fund's immunity under its Articles, based on notions of "functional

necessity."  Here again, he seems to contend that the immunity afforded to international

organizations under the IOIA does not apply if recognition of immunity would not advance the

official functions of the organization.  And once again, his argument is entirely unfounded.

To be sure, the D.C. Circuit has employed a concept of "functional necessity" in some

IOIA immunity cases.  But when it has done so, it has only been to resolve questions—of a sort

not present in this case—about the scope of an *express waiver* of immunity.  More specifically,

functional considerations have entered into the D.C. Circuit's application of the IOIA only to

determine the scope of an organization's *express waiver of immunity* that is articulated in the

organization's foundational documents.  Such considerations have had no role whatsoever in

assessing the extent of immunity conferred in the first instance.  Indeed, in the IOIA cases in

which the D.C. Circuit has employed functional considerations, the D.C. Circuit has consistently

made clear that the default rule under the IOIA favors immunity.  Thus, the D.C. Circuit's

concept of "functional necessity" not only bears no resemblance to, but is essentially the reverse

of, what Plaintiff posits.

The D.C. Circuit's conception of how functional considerations may—and may not—

enter into an immunity analysis is exemplified in *Atkinson* itself.  A key issue in that case was

whether an express waiver of immunity in the Inter-American Development Bank's foundational

agreement—for which there is no counterpart in the IMF's Articles—extended to a particular

class of suit (garnishment proceedings).  Rejecting an approach that is akin to Plaintiff's, the

Court of Appeals explained:

> In [plaintiff's] view, the Bank's immunity should be construed as *waived* unless the particular type of suit would *impair* the Bank's objectives. . . . We think, however, that our formulation . . . supports the opposite default rule: the Bank's immunity should be construed as *not waived* unless the particular type of suit would *further* the Bank's objectives.

156 F.3d at 1338 (emphasis in original). The Court declined to construe the waiver to encompass garnishment proceedings because subjecting the Inter-American Development Bank to such suits could not conceivably further the Bank's objectives. *Id.* at 1338-39. The D.C. Circuit took the same approach in *Dujardin*, 9 Fed. App'x at 20, which raised the question of whether a similar waiver of immunity in the World Bank's Articles of Agreement extended to the plaintiff's defamation suit. The Court held that it did not, "because the [plaintiff's] suit neither furthers the World Bank's objectives nor enhances the Bank's ability to participate in commercial transactions." *Id.* In other words, the Court of Appeals construed the express waivers in the Banks' foundational documents to be limited to circumstances in which subjecting the Banks to lawsuits would further the Banks' objectives; because neither suit met that requirement, the Court held that the Banks had not waived their immunity and affirmed the dismissal of the plaintiffs' suits.

Plaintiff asks the Court to turn the above framework on its head and to adopt precisely the opposite default rule. His "functional necessity" test would allow individual suits to proceed so long as "*the immunity* Defendant asserts here is not necessary to fulfill its functions." (Opp'n at 9 (emphasis added).) In other words, Plaintiff proposes a default rule under which the IMF is generally not immune, and any assertion of immunity must be justified by functional necessity— even though there is no waiver provision in the IMF's Articles (or anywhere else) that would allow functional considerations to come into play. The cases he cites, *Broadbent v. Organization of American States*, 628 F.2d 27, 34-35 (D.C. Cir. 1980), and *Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983), in no way support his contention that "an international organization's

immunity is limited by its functional necessity." (Opp'n at 6.)  In both those cases, the D.C.

Circuit *affirmed* the dismissal of actions against the respective organizations; functional

considerations of the sort Plaintiff now invokes in no way limited the defendant organizations'

immunity.

Moreover, in *Mendaro*, the Court of Appeals squarely rejected the notion that the IOIA

permits courts to limit an international organization's immunity based on a judicial assessment of

functional need.  *Mendaro* explained that there are only two sources of limitation under the

IOIA, neither of which applies here:

> First, the organization itself may expressly waive its immunity.  Second, the
> President may specifically limit the organization's immunities when he selects the
> organization as one entitled to enjoy the Act's privileges and immunities.  At any
> time thereafter, such as when the organization abuses its privileges, the immunity
> may be modified, conditioned, or revoked *by executive order.*

*Mendaro*, 717 F.2d at 613-14 (emphasis added); *see also Dujardin*, 9 Fed. App'x at 20 ("There

are only two sources of limitation to the immunity: (1) the organization itself may waive its

immunity and (2) the President may specifically limit the organization's immunities. . ." ).  Thus,

to the extent the IOIA allows post-enactment modifications to limit the immunity of a particular

international organization, it explicitly assigns authority over such modifications to the President,

not the Judiciary.  *See* 22 U.S.C. § 288 (granting the President the authority to "withhold or

withdraw from any such organization . . . any of the privileges, exemptions, and immunities

provided for in this subchapter").  Further, this statutory provision for Presidential modification

of an organization's immunities under the IOIA precludes modifications through other means.

As the D.C. Circuit explained in *Atkinson,* "[t]his built-in mechanism for updating the IOIA

undermines [plaintiff's] claim that Congress intended a different updating mechanism:

automatic alteration of the scope of immunity under the IOIA in accordance with developments

in the law governing the immunity of foreign sovereigns." *Atkinson*, 156 F.3d at 1341.[3/]

### C.    The D.C. Circuit's Functional Analysis Does Not Apply to the IMF Because Its Articles Contain No Waiver of Immunity

The D.C. Circuit's resort to functional analysis in certain immunity cases arising under

the IOIA does not help Plaintiff, for two reasons.  First, unlike the foundational documents of the

World Bank in *Mendaro* and *Dujardin*, and of the Inter-American Development Bank in

*Atkinson*, the IMF's Articles contain no waiver provision to which any functional considerations

might attach.  Second, even if there were an analogous waiver provision in the IMF's Articles,

Plaintiff has not argued—nor could he argue—that subjecting the IMF to personal injury suits is

somehow necessary to further the IMF's official objectives.  As spelled out in the Articles, the

purposes of the IMF are, *inter alia*, to promote international monetary cooperation, to facilitate

the expansion and balanced growth of international trade, to promote exchange stability, and to

provide temporary financial assistance to its member countries experiencing balance of payment

difficulties.  *See* Art. I.  These objectives would in no way be furthered by exposing the IMF to

personal injury actions in any of its 185 member countries.

Tellingly, Plaintiff does not cite a single case in which the IMF has been held amenable

to suit, either for want of immunity or because of an express waiver.  For that matter, he cites

---

[3/]    The IOIA's legislative history also reflects an intent by Congress to allow the President (and only the President) to modify international organizations' immunity where a designated organization has abused its immunity or engaged in *ultra vires* activities in the United States. *See* H. Rep. No. 1203, at 948 (1945) ("The broad powers granted to the President will permit prompt action in connection with any abuse of the privileges and immunities granted hereunder or presumably for other reasons such as the conduct of improper activities by international organizations in the United States.").  *See also* S.R. Rep. No. 861, 79th Cong., 1st Sess. 2 (1945) ("This provision will permit the adjustment or limitation of the privileges in the event that any international organization should engage for example, in activities of a commercial nature.") (quoted in *Broadbent*, 628 F.2d at 32).

only one case, *Rendall-Speranza*, in which *any* international organization has been held

amenable to suit, but neither that case nor the others he cites are apposite.  (*See* Opp'n at 12

(urging the Court to follow *Lutcher S.A. Celulose e Papel Candoi v. Inter-American Dev't Bank*,

253 F. Supp. 568 (1966); *Olem v International Bank for Reconstr. & Dev't*, 95-cv-855 (D.D.C.

1995); and *Rendall-Speranza v. Nassim*, 932 F. Supp. 19 (D.D.C. 1996)).)  Each of those cases

predated *Atkinson*, so none of them had the benefit of that decision's in-depth analysis of IOIA's

immunity provisions.  Each is also easily distinguished.

In *Lutcher*, the district court actually *granted* the Inter-American Development Bank's

motion to dismiss, holding that the Bank was immune under the IOIA.  The decision notes that

"[w]hen a suit filed in a court of law could conceivably involve delicate matters of international

relations, the courts should recognize that under the Constitution such matters are confided to the

judgment and discretion of the Executive Branch." *Lutcher*, 253 F. Supp. at 569-70.  In a

footnote, the Court cited three instances in which the Bank had been sued on "simple torts and

contracts," implying—without stating or holding—that such matters may be appropriate for

judicial treatment.  *Id.* at 569 & n.6-8.  The disposition of those cases is never discussed.

Whatever their outcomes, the mere fact that three cases were filed against the Inter-American

Development Bank in the 1960s has no bearing on the IMF's immunity under its own Articles or

the IOIA today.  Plaintiff's second case, *Olem*, settled before the Court ruled on the World

Bank's motion to dismiss on immunity grounds.  (*See* Opp'n at 12, Att. D (Docket sheet for

*Olem*).)  Plaintiff's third case is most surprising of all.  He asks this Court to follow *Rendall-*

*Speranza* (Opp'n at 12 & n.3), where the district court held that international organizations no

longer enjoyed the broad immunities of the IOIA, but only the narrower immunities under the

subsequently enacted Foreign Sovereign Immunities Act.  *Rendall-Speranza*, 932 F. Supp. at 24.

The D.C. Circuit *expressly disapproved of precisely this holding* when it reached the opposite

conclusion in *Atkinson*.  *See Atkinson*, 156 F.3d at 1341 & n. 6 ("We accordingly disapprove of

the contrary holding in *Rendall-Speranza*…").  This Court may not simply resurrect *Rendall-*

*Speranza* on Plaintiff's suggestion.[4]

---

[4]      The other cases upon which Plaintiff relies (Opp'n at 12) are even further afield, as both
cases involved actions initiated by the organizations themselves.  *Cf. United States v. BCCI
Holdings, S.A.*, 73 F.3d 403, 404 (D.C. Cir. 1996) (action by Organization of American States to
obtain adjudication of its interest in funds held in bank placed in receivership); *Pan American
Health Organization v. Montgomery County*, 657 A.2d 1163 (Md. Ct. App. 1995) (action by
PAHO regarding its qualification as a "public" entity exempt from certain aspects of Maryland's
zoning laws).

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's case should be dismissed with prejudice on

the basis of the IMF's absolute immunity from suit.

Respectfully submitted,


/s/ Patrick J. Carome
Patrick J. Carome, D.C. Bar No. 385676
Christopher E. Babbitt, D.C. Bar No. 982508
WILMER CUTLER PICKERING
   HALE and DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000
patrick.carome@wilmerhale.com
christopher.babbitt@wilmerhale.com

Christopher E. Hassell, D.C. Bar No. 291641
BONNER KIERNAN TREBACH
   & CROCIATA, LLP
1233 20th Street, NW
Suite 800
Washington, DC 20036
(202) 712-7000
chassell@bktc.net

*Counsel for the International Monetary Fund*


Dated:  December 8, 2008

- 16 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of December, 2008, a copy of the foregoing

International Monetary Fund's Reply In Support of Its Motion to Dismiss was filed

electronically with the Clerk of the Court.  The electronic filing prompted automatic service of

the filing on all counsel of record in this case who have obtained CM/ECF passwords.


/s/ Christopher E. Babbitt
Christopher E. Babbitt